Jonathan SPIELBERG, a minor, by his parents, Howard and Susan SPIELBERG, as his next friend; Howard Spielberg; Susan Spielberg, Plaintiffs–Appellees,

v.

HENRICO COUNTY PUBLIC SCHOOLS; Malcolm M. Christian, Chairman, Henrico County School Board; William C. Bosher, Jr., Superintendent, Henrico County Public Schools; Morton Bradman, Assistant Superintendent for Instructional Support Services, Henrico County Public Schools; Joann Marchant, Principal, Virginia Randolph Special Education Center, Henrico County Public Schools; Patricia Martin, Special Education Teacher, Virginia Randolph Special Education Center, Henrico County Public Schools; Gwendolyn Whiting, Home Support Trainer, Virginia Randolph Special Education Center; Dorothy Sugarman, Social Worker, Henrico County Public Schools; School Psychologist, Henrico County Public Schools, Defendants–Appellants.

Jonathan SPIELBERG, a minor, by his parents, Howard and Susan SPIELBERG, as his next friend; Howard Spielberg; Susan Spielberg, Plaintiffs–Appellants,

v.

HENRICO COUNTY PUBLIC SCHOOLS; Malcolm M. Christian, Chairman, Henrico County School Board; William C. Bosher, Jr., Superintendent, Henrico County Public Schools; Morton Bradman; Assistant Superintendent for Instructional Support Services, Henrico County Public Schools; Joann Marchant, Principal, Virginia Randolph Special Education Center, Henrico County Public Schools; Patricia Martin, Special Education Teacher, Virginia Randolph Special Education Center, Henrico County Public Schools; Gwendolyn Whiting, Home Support Trainer, Virginia Randolph Special Education Center; Dorothy Sugarman, Social Worker, Henrico County Public Schools; Social Worker, Henrico County Public Schools; School Psychologist, Henrico County Public Schools, Defendants–Appellees.

Nos. 87–3640, 87–3643.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1988.

Decided Aug. 5, 1988.

Rehearing and Rehearing In Banc Denied Sept. 22, 1988.

Joseph T. Tokarz, II, Richmond, Va., for defendants-appellants.

Thomas Franklin Guernsey, Richmond, Va., for plaintiffs-appellees.

Before WIDENER, ERVIN, and WILKINS, Circuit Judges.

ERVIN, Circuit Judge:

Jonathan Spielberg is a severely retarded nineteen year old resident of Henrico County, Virginia. Since 1977, the Henrico County Public Schools have paid the full cost of his education at the Melmark School ("Melmark"), a residential facility in Pennsylvania, under the Education of All Handicapped Children Act ("EHA"), 20 U.S.C. § 1401, et seq. In March 1985, the county initiated a reevaluation of Jonathan's placement which concluded that he could be educated at a local school. His parents appealed that decision, seeking to continue his institutional placement. The district court reversed the state administrative decision, first finding that the county violated EHA procedures, and on reconsideration finding that Jonathan requires institutional placement. We affirm based on procedural violations of the EHA.

I.

Jonathan Spielberg possesses the functional skills of an eighteen month old child. His capabilities are extremely limited, and his individualized education programs ("IEP") at Melmark have concentrated on survival skills, such as toilet training. At Melmark, where he continues to study under the "stay put" provision of the EHA, 20 U.S.C. § 1415(e)(3), he goes to school throughout the year and receives after school and evening care and training.

The 1985 reevaluation began only nine months after a regular triennial evaluation which continued Jonathan's Melmark placement. From the beginning, county officials focused on a new placement at Virginia Randolph Special Education Center ("Randolph"), a public facility in Henrico County. After a series of letters and meetings between school officials and the Spielbergs, a new IEP was drawn up providing for Jonathan to attend Randolph during the day while living at home. He would attend school 5-½ hours per day during a nine month school year and four hours daily during a six week summer session. After school activities would be home-based, involving either his parents or a hired caretaker, with training available for them from a trainer provided by the school.

The Spielbergs first appealed the placement decision administratively. The local hearing officer concluded that there were no procedural violations of the EHA, and that the new IEP was appropriate, but that Jonathan required residential placement at Melmark. The state reviewing officer affirmed on the procedural compliance issue, but reversed on the placement issue, finding Randolph placement to be appropriate.

The Spielbergs appealed this decision to the district court under 20 U.S.C. § 1415(e)(2).

The district court initially found that the school system violated EHA procedure by determining appropriate placement before developing an IEP. *See* 34 C.F.R. § 300.552. The court based its finding on a series of letters written before the IEP meeting held in November, 1985, which focused on a change from Melmark to Randolph. Based on the procedural violation, the court ordered the continuation of Melmark placement.

The court subsequently vacated its initial decision in light of 34 C.F.R. § 300.347 and *Patterson C. v. Board of Education of Prince George's County*, No. M–85–3948 (D.Md. Sept. 23, 1986), *aff'd*, 818 F.2d 29 (4th Cir.1987) (per curiam). In *Patterson C.*, the courts affirmed an IEP developed after placement in a private school was decided. Section 300.347 specifically calls for a chosen private school to participate in IEP development. After vacating his earlier decision, however, Judge Merhige reached the same result on the merits. He found that the burden of proof was on the defendants as they were seeking to change Jonathan's placement. He further found that they had not carried that burden by showing that Jonathan would receive educational benefits at Randolph. Therefore, he ordered the Melmark placement to continue. The defendants appeal his decision regarding placement, and the Spielbergs appeal his finding of procedural compliance.

## II.

■ Congress, through the EHA, uses federal money to induce the states to provide handicapped students with a free appropriate public education ("FAPE"). An IEP is developed for each handicapped child by school officials and the child's parents. Educational placement is based on the IEP, which is revised annually. Disputes regarding the IEP or placement are subject to administrative and judicial review.

In judicially reviewing the administrative outcome, the courts should make "independent decisions based on a preponderance of the evidence." *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982); *see* 20 U.S.C. § 1415(e)(2).[1] Due weight shall be given to state administrative proceedings, as the primary responsibility for developing IEPs belongs to state and local agencies in cooperation with the parents, not the courts. *Rowley*, 458 U.S. at 206–207, 102 S.Ct. at 3050–51. The reviewing court should make two inquiries: (1) Did the school board procedurally comply with the EHA and its implementing regulations? (2) Is the IEP reasonably calculated to provide educational benefits to the child? *Id.*[2]

## III.

■ The district court found that the defendants decided to change Jonathan's

1. 20 U.S.C. § 1415(e)(2) provides:

Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

2. The district court based its decision on the defendant's failure to prove that the proposed placement at Randolph was reasonably calculated to provide educational benefits. It assigned the burden of proof to the defendants as the party seeking to change Jonathan's placement. *See Burger v. Murray County School District*, 612 F.Supp. 434 (N.D.Ga.1984). The burden, however, is more properly allocated to the party bringing the civil action to challenge the state administrative decision. *See Tracey T. v. McDaniel*, 610 F.Supp. 947 (N.D.Ga.1985). Although we reach the same result as the district court based on procedural noncompliance, *infra*, we cannot affirm its reasoning because of this misallocation of the burden of proof.

placement from Melmark to Randolph before developing a new IEP to support the change. Under the EHA, the general rule is that placement should be based on the IEP. 34 C.F.R. § 300.552.[3] The appendix interpreting the EHA regulations states that "IEP objectives must be written before placement." 34 C.F.R. Part 300, App. C., Question 42. The decision to place Jonathan at Randolph before developing an IEP on which to base that placement violates this regulation as interpreted by the Secretary of Education. It also violates the spirit and intent of the EHA, which emphasizes parental involvement. After the fact involvement is not enough.

The court below vacated its initial finding of procedural noncompliance because in some instances, the placement decision can precede IEP development. *See Patterson C., supra.* 34 C.F.R. § 300.347 calls for the private school which a child will attend to participate in IEP development. *Patterson C.* and § 300.347, however, reflect the need to include any outside parties like private schools in IEP development. In the majority of cases, the child will be educated in public facilities, not private ones. Thus, there is no reason to predetermine placement and involve representatives of the chosen private school in IEP development. Since Randolph is a public school, the general rule, not the exception, applies, and placement should have followed IEP development.

The defendants violated EHA procedures when they resolved to educate Jonathan Spielberg at Randolph, and then developed an IEP to carry out their decision. This failure to follow EHA procedures is sufficient to hold that the defendants failed to provide Jonathan with a FAPE. *See Hall v. Vance Cty. Bd. of Educ.*, 774 F.2d

629, 635 (4th Cir.1985). Therefore, the district court order that he remain in his current placement is

*AFFIRMED.*

---

3. 34 C.F.R. § 300.552 provides:

§ 300.552 Placements.

Each public agency shall insure that:

(a) Each handicapped child's educational placement: (1) Is determined at least annually, (2) Is based on his or her individualized education program, and (3) Is as close as possible to the child's home;

(b) The various alternative placements included under § 300.551 are available to the extent necessary to implement the individualized education program for each handicapped child;

(c) Unless a handicapped child's individualized education program requires some other arrangement, the child is educated in the school which he or she would attend if not handicapped; and

(d) In selecting the least restrictive environment, consideration is given to any potential harmful effect on the child or on the quality of services which he or she needs.